IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HYOSUNG (AMERICA) INC and
NAUTILUS HYOSUNG INC

    Petitioners,

    v

TRANAX TECHNOLOGIES INC,

    Respondent.
_____/

No C 10-0793 VRW

ORDER

Petitioners Hyosung (America) Inc and Nautilus Hyosung Inc (collectively "Hyosung") seek confirmation of the February 9, 2010 arbitration award and entry of judgment. Doc #1. For the reasons explained below, Hyosung's petition to confirm the arbitration award is GRANTED.

I

Petitioner Nautilus Hyosung Inc, a Korean manufacturer of automated teller machines ("ATMs"), entered an exclusive distribution agreement in 1998 with Respondent Tranax Technologies,

Inc ("Tranax") to distribute ATMs in the United States and Canada. Doc #1 ¶10. In 2005 the parties entered a new distribution agreement which contained an arbitration clause. Id ¶¶10, 11. The arbitration clause states in relevant part:

> Any dispute arising under or in connection with this Agreement shall be resolved * * * by final and binding arbitration administered by American Arbitration Association in accordance with its International Arbitration Rules if brought by Hyosung. The award of the arbitral tribunal shall be final and binding. Judgment on the award of the arbitral tribunal may be entered and enforced by any court of competent jurisdiction.

Doc #7 (Kim Decl) Ex B (2005 Distributorship Agreement) § 14.8.

In 2006 a dispute arose between the parties involving the distribution agreement and trademark infringement. Doc #1 ¶13. Hyosung filed an arbitration with the International Centre for Dispute Resolution of the American Arbitration Association ("ICDR") in August 2007. Id ¶14.

The arbitration took place before a sole arbitrator in South Korea. Id ¶15. After considering the parties' briefs on Hyosung's application to bifurcate the damages claims, the arbitrator decided to bifurcate the proceedings into Phase I (liability) and Phase II (damages) in order to "make for a more efficient hearing." Doc #39 Ex A (Amended Procedural Order) § 1.4. The arbitrator directed that the amount of damages would be tried in Phase II only if applicable after the determination of issues of liability in Phase I. Id § 1.7. The arbitrator decided however to adjudicate the amount of liability on Hyosung's claim for unpaid invoices during Phase I because it involved "agreed sums and not a claim for damages," unless he were to find that Tranax had

\\

established a set-off defense and defer the award of liability until he determined the amount of the set-off. Id § 1.5.

The arbitrator issued a Partial Award on Liability resolving the Phase I issues on February 9, 2010. Doc #7 Ex A ("AA"). The Phase I award found Tranax liable for breach of contract, found Hyosung not liable for breach of contract and found that Tranax was not entitled to a set-off. AA §§ 11.1.3-6. The award found both Tranax and Hyosung liable on some but not all trademark claims. AA §§ 11.1.8-13. Having determined liability for all claims and counterclaims, the award found that Hyosung succeeded on its claim for damages on Tranax's unpaid bills in the amount of $3,180,090.00 plus interest. AA § 10.1.37(a). The award found Hyosung entitled to "[a]n order requiring [Tranax] to make immediate payment of the principal amount of US$3,180,090.00 to Hyosung America." Id. The assessment of other damages was reserved for determination during the Phase II proceedings. Id § 11.5.

On February 24, 2010 Hyosung filed the instant petition to confirm the partial award. Hyosung also filed motions for expedited discovery and for a writ of attachment to ensure that Tranax will have the assets to pay the award if confirmed. Following a hearing on March 25, 2010, the court issued an order granting Hyosung's motions on March 31, 2010.

Hyosung now asks the court to confirm the Phase I partial award and enter judgment accordingly. Tranax opposes confirmation of the Phase I award on the ground that it is not a final award, and asks the court to vacate its earlier order issuing the writ of attachment and granting expedited discovery. The court determines

3

1 that a hearing is not necessary.  Having considered the papers and
2 the relevant legal authority, the court GRANTS Hyosung's petition
3 to confirm the arbitration award.  Accordingly, the court denies
4 Tranax's request to vacate the March 31, 2010 order.

## II

### A

The parties do not dispute that the Phase I award is subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 UNTS 38 ("New York Convention").  The Federal Arbitration Act provides that within three years after an arbitration award falling under the New York Convention is made, any party to the arbitration may apply for an order confirming the award as against any other party to the arbitration.  9 USC § 207.  The Federal Arbitration Act requires that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  Id.

Tranax bases its opposition to the petition to confirm award on Article V § 1(e) of the New York Convention, which allows the court to refuse recognition and enforcement upon proof that "[t]he award has not yet become binding on the parties."  Doc #7 Ex D.  Tranax contends that the Phase I award decided "only questions of liability," and that the undecided issues such as damages preclude a finding that the award is final.  Doc #40 at 3.

In the March 31, 2010 order issuing a writ of attachment and granting Hyosung's discovery motion, the court found that "the Ninth Circuit authority presented by Tranax does not resolve the

question whether the court has jurisdiction to confirm a partial international arbitration award under 9 USC § 207." Doc #33 at 5. The court therefore turned to the reasoning of the Second Circuit in <u>Metallgesellschaft AG v M/V Capitan Constante</u>, 790 F2d 280, 283 (2d Cir 1986), which held that the court has jurisdiction to confirm a partial international arbitration award where the award "finally and conclusively dispose[s] of a separate and independent claim and [is] subject to neither abatement nor set-off." Adopting the reasoning of <u>Metallgesellschaft</u>, the court determined that it may confirm a partial arbitration award that conclusively disposes of a claim if no possibility for set-off or abatement remains, as confirmation of the partial award will not affect any further proceedings before the arbitrator. Doc #33 at 6. The court found that "[t]he Phase I award determines liability and the amount Tranax owes Hyosung because of Tranax's unpaid invoices. Although further proceedings are scheduled to occur before the arbitrator, the arbitrator's resolution of the unpaid invoices is not subject to change." Doc #33 at 5. Thus, for the purposes of weighing the probable validity of Hyosung's claim upon issuance of a writ of attachment, the court found that the Phase I award "finally and conclusively determines liability and damages arising from the parties' dispute over unpaid invoices. Accordingly, the court concludes that the Phase I award is the proper subject of a petition to confirm under 9 USC § 207." Id at 6.

    In opposition to the petition to confirm award, Tranax has not provided authority to persuade the court that the Phase I award is not binding under the New York Convention and therefore not enforceable. Even after the court issued guidance in its March

5

31, 2010 ruling, Tranax relies on several authorities governing the finality of domestic arbitration awards under the Federal Arbitration Act, but does not shed much more light on the applicable standards for confirming partial foreign arbitration awards under the New York Convention. Doc #40 at 3 (citing <u>Kerr-McGee Refining Corp v M/T Triumph</u>, 924 F2d 467, 471 (2d Cir 1991) (determining finality of award under Federal Arbitration Act) and <u>Michaels v Mariforum Shipping, SA</u>, 624 F2d 411, 414 (2d Cir 1980) (judicial review of arbitrators' interim ruling that does not resolve finally the issues is unavailable under the Federal Arbitration Act)).

Tranax cites <u>Hall Steel Co v Metalloyd Ltd</u>, 492 F Supp 2d 715 (ED Mich 2007), for the proposition that Hyosung must establish either an immediate need for relief or an intent of the parties to have the arbitrator issue an interim arbitration award that is subject to confirmation. Doc #40 at 4. The court does not find Hyosung's arguments in support of either requirement to be persuasive.

1

Tranax suggests that the court should follow the reasoning of <u>Hall Steel</u> to adopt a condition of "immediate need for relief" in order to confirm a partial award under the New York Convention. <u>Hall Steel</u> cites circuit court decisions addressing interim arbitration rulings where a party to the arbitration presented some urgency and sought immediate relief from the arbitrators, 492 F Supp 2d at 719, but none of those circuit court decisions required an urgent need to confirm the interim

arbitration decisions; rather the circuit courts considered whether the interim order finally disposed of a discrete or severable issue.

Hall Steel relies on Island Creek Coal Sales Co v City of Gainesville, 729 F2d 1046, 1047-48 (6th Cir 1984), abrogated on other grounds by Cortez Byrd Chips, Inc v Bill Harbert Const Co, 529 US 193 (2000), in which the Sixth Circuit upheld the district court's confirmation of an interim arbitration order granting injunctive relief to preserve the status quo on shipments of coal. The Sixth Circuit held that under 9 USC § 10, the interim award disposed of a self-contained issue (whether the city was required to perform the contract during the pendency of arbitration proceedings) and could be confirmed "notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration." 729 F2d at 1049 (citations omitted). The circuit court did not rely on the urgency of the situation to determine the finality of the award.

To support a condition of "immediate need" to confirm an interim award, Hall Steel also cites Publicis Communication v True North Communications, Inc, 206 F3d 725 (7th Cir 2000), in which a party to the arbitration, True North, claimed an urgent need for its opponent's tax records, and the arbitration tribunal ordered the production of those tax records. The Seventh Circuit affirmed the district court's confirmation of the arbitration decision under the New York Convention, noting the exception under Article V § (1)(e) to judicial enforcement for awards that have not yet become binding on the parties. 206 F3d at 728. The Seventh Circuit rejected the producing party's formalistic argument that the

7

tribunal's decision was not final because it did not bear the word "award," and rather considered the decision's "substance and effect" to determine whether the tribunal's order to turn over the tax records was final and subject to confirmation. Id at 730. The circuit court reasoned that "[a] ruling on a discrete, time-sensitive issue may be final and ripe for confirmation even though other claims remain to be addressed by arbitrators." 206 F3d at 729.

Although the Seventh Circuit noted that the tribunal had determined that True North's need for tax records was urgent at the time that the award was issued, the urgency was not determinative of the finality of the award for purposes of confirmation. On the contrary, True North's need for tax records was no longer urgent when the circuit court reviewed the district court's confirmation of the arbitration decision. The circuit court noted that the dispute over the tax records had been rendered moot because True North had received all the documents that it wanted, but the court decided to proceed with the merits of the dispute over confirmation of the award. 206 F3d at 727-28. The Seventh Circuit considered the intent of the arbitrators in issuing their interim decision, noting that the arbitration decision stated that "the delivery of the documents should not await final confirmation in the Final Award." Id at 729.

Hall Steel also cites Pacific Reinsurance v Ohio Reinsurance, 935 F2d 1019, 1022 (9th Cir 1991), on which Tranax relies in its opposition to the petition to confirm award. As the court noted in the March 31, 2010 order granting Hyosung's motions for expedited discovery and issuance of writ of attachment, Pacific

8

Reinsurance held that the district court has jurisdiction under the Federal Arbitration Act to review and confirm temporary equitable awards. Doc #33 at 5. There, the Ninth Circuit held that temporary equitable relief such as setting up an escrow account pending the arbitrators' decision could be important to preserve assets or performance needed to make a potential final award meaningful and must be enforceable at the time it is granted, not after an arbitrator's final decision on the merits. 935 F2d at 1023. Although Pacific Reinsurance recognizes the finality of such a temporary equitable order under the Federal Arbitration Act, the Ninth Circuit did not require "immediate need" as a requisite condition to confirm an interim award, as Tranax suggests.

Because the court does not adopt a requirement that the party seeking to confirm a partial foreign arbitration award must present an "immediate need for relief" as proposed by Tranax, the court holds that the Phase I award is binding on the parties because it finally and conclusively disposes of Hyosung's separate and independent claim of damages arising from the parties' dispute over unpaid invoices and is not subject to abatement nor set-off. Metallgesellschaft, 790 F2d at 283. The arbitrator's intent to make this award binding is demonstrated by his finding that Hyosung is entitled to "immediate payment of the principal amount of US$3,180,090.00" and his finding that Tranax was not entitled to set-off. AA §§ 10.1.37(a) and 11.1.6. In advance of the hearing, the arbitrator issued a procedural order indicating that he would defer the award on liability for the unpaid invoices if he found that Tranax established any defense of set-off. Doc #39 Ex A § 1.5. Having decided that Tranax was not entitled to set-off, the

9

arbitrator proceeded to award the unpaid invoices, which differed from the other claims for damages because it involved an agreed sum. Id. In light of the arbitrator's stated intent to conduct an efficient hearing by bifurcating the issues of liability and quantum of damages other than unpaid invoices, id § 1.4, the court finds that the Phase I award disposes of the liability issues and amount of damages for the separate, independent claim over unpaid invoices. See Publicis Communication, 206 F3d at 730-31 ("If the tribunal's decision wasn't final, if the tribunal really didn't intend to finalize it until eons later * * * then the [arbitral] decision was a meaningless waste of time.")

2

Tranax cites Hall Steel for the alternative proposition that an interim or partial award should be confirmed only where the parties have evidenced such an intent. Doc #40 at 5-6. Tranax's reliance on Hall Steel for this proposition is misplaced. Hall Steel did not apply this reasoning in its decision and noted that there was no indication that the arbitrator believed he was acting in accordance with the parties' shared intent to decide liability for costs incurred in litigating the threshold issue of proper forum. 492 F Supp 2d at 720 n1. In fact, the arbitrator in Hall Steel acknowledged the plaintiff's objection to handling the determination of costs first, but decided nevertheless to proceed. Id. Similarly, Tranax objected to bifurcation of the arbitration proceedings, but the arbitrator determined that bifurcation would make for a more efficient hearing. AA § 5.5.2.

\\

Any doubt about Tranax's intent to submit to a binding arbitration decision is resolved by the arbitration clause in the 2005 Distributorship Agreement. Tranax's argument that the arbitration clause contemplates a single arbitration award because it states that "<u>the</u> award of the arbitral tribunal shall be final and binding" is not supported by any language in the arbitration clause to indicate such an intent and epitomizes the kind of "superficial technicalities" decried by the Seventh Circuit in <u>Publicis Communication</u>, 206 F3d at 730.

B

Tranax further challenges confirmation of the Phase I award on the grounds of public policy and the unresolved issue of attorney fees and costs. Neither argument has merit. First, Tranax does not appear to rely on the public policy defense under Article V section 2(b) of the New York Convention, but only suggests that confirmation of the Phase I award now would offend public policies that discourage a multiplicity of proceedings and court interference in arbitration proceedings. Here, the fear of multiple proceedings evaporates in light of the arbitrator's decision to make the arbitration more efficient by bifurcation. Furthermore, courts have recognized that the New York Convention and the mandatory language in its implementing legislation have "a pro-enforcement bias," leaving little discretion to the district courts. <u>Glencore Grain Rotterdam BV v Shivnath Rai Harnarain Co</u>, 284 F3d 1114, 1120 (9th Cir 2002) (citations omitted). In contrast to the rules governing federal civil litigation, the provisions of the Federal Arbitration Act implementing the New York Convention do

11

not impose strict gate-keeping procedures on the district courts to fulfill their mandate to confirm international arbitration awards.

Second, Tranax contends that the Phase I award is not final and may not be confirmed because the award leaves open the issue of attorney fees and costs. AA § 10.9.2. The issue of attorney fees does not bear on Tranax's liability for the amount due on the unpaid invoices. Based on the experience of the district courts in determining attorney fees and costs following entry of judgment on the merits, the court concludes that the arbitrator's determination of attorney fees is easily severable and distinct from the award of damages for unpaid bills plus interest, which was the subject of the award.

C

The amount awarded to Hyosung in the Phase I arbitration award, as hereby confirmed, is summarized below:

| Description | Amount |
|---|---|
| Principal sum due on unpaid bills (AA § 11.3.1(a)) | $3,180,090.00 |
| Simple interest at 6% per annum accrued from the due date of each invoice to the filing of arbitration on August 24, 2007 (AA § 11.3.1(b)) | $120,637.01 |
| Simple interest at 20% per annum accrued from August 25, 2007 to August 24, 2009 (AA § 11.3.1(c)) | $1,272,036.00 |
| Simple interest at $1,742.52 per day from August 25, 2009 to May 6, 2010 (254 days) (Id) | $442,600.08 |
| TOTAL AWARD as of May 6, 2010 | $5,015,363.09 |

12

Thus calculated, the award to Hyosung totals $5,015,363.09 as of May 6, 2010 plus daily interest of $1,742.52 per day thereafter until the date of payment.

### III

For the reasons explained above, the court GRANTS Hyosung's petition to confirm the arbitration award.  Doc #1. Accordingly, the court orders as follows:

(1) Pursuant to 9 USC § 201 et seq, the Partial Award entered on February 9, 2010 in <u>Nautilus Hyosung Inc et al v Tranax Technologies, Inc</u>, ICDR Case No 50 155 T 00328 07, is hereby CONFIRMED;

(2) the clerk is directed to enter judgment in favor of Petitioners Hyosung (America) Inc and Nautilus Hyosung Inc, and against Respondent Tranax Technologies, Inc, for the amount of $5,015,363.09, plus daily interest of $1,742.52 each day after May 6, 2010 until the date of payment, in conformity with this Order confirming the Partial Award; and

(3) the clerk is directed to terminate all pending motions and close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

13