1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**HYOSUNG (AMERICA) INC and NAUTILUS HYOSUNG INC**

        **Petitioners,**

        **v**

**TRANAX TECHNOLOGIES INC,**

        **Respondent.**
_____/

**No   C 10-0793 VRW**

**ORDER**

        **Petitioners Hyosung (America) Inc and Nautilus Hyosung Inc (collectively "Hyosung") seek confirmation of the February 9, 2010 arbitration award and entry of judgment.  Doc #1.  For the reasons explained below, Hyosung's petition to confirm the arbitration award is GRANTED.**

                                 **I**

        **Petitioner Nautilus Hyosung Inc, a Korean manufacturer of automated teller machines ("ATMs"), entered an exclusive distribution agreement in 1998 with Respondent Tranax Technologies,**

**United States District Court**
For the Northern District of California

1   Inc ("Tranax") to distribute ATMs in the United States and Canada.

2   Doc #1 ¶10.  In 2005 the parties entered a new distribution

3   agreement which contained an arbitration clause.  Id ¶¶10, 11.  The

4   arbitration clause states in relevant part:

5           Any dispute arising under or in connection with
           this Agreement shall be resolved * * * by final and
6           binding arbitration administered by American
           Arbitration Association in accordance with its
7           International Arbitration Rules if brought by
           Hyosung.  The award of the arbitral tribunal shall
8           be final and binding.  Judgment on the award of the
           arbitral tribunal may be entered and enforced by
9           any court of competent jurisdiction.

10  Doc #7 (Kim Decl) Ex B (2005 Distributorship Agreement) § 14.8.

11          In 2006 a dispute arose between the parties involving the

12  distribution agreement and trademark infringement.  Doc #1 ¶13.

13  Hyosung filed an arbitration with the International Centre for

14  Dispute Resolution of the American Arbitration Association ("ICDR")

15  in August 2007.  Id ¶14.

16          The arbitration took place before a sole arbitrator in

17  South Korea.  Id ¶15.  After considering the parties' briefs on

18  Hyosung's application to bifurcate the damages claims, the

19  arbitrator decided to bifurcate the proceedings into Phase I

20  (liability) and Phase II (damages) in order to "make for a more

21  efficient hearing."  Doc #39 Ex A (Amended Procedural Order) § 1.4.

22  The arbitrator directed that the amount of damages would be tried

23  in Phase II only if applicable after the determination of issues of

24  liability in Phase I.  Id § 1.7.  The arbitrator decided however to

25  adjudicate the amount of liability on Hyosung's claim for unpaid

26  invoices during Phase I because it involved "agreed sums and not a

27  claim for damages," unless he were to find that Tranax had

28  \\

United States District Court
For the Northern District of California

1    established a set-off defense and defer the award of liability

2    until he determined the amount of the set-off.  Id § 1.5.

3            The arbitrator issued a Partial Award on Liability

4    resolving the Phase I issues on February 9, 2010.  Doc #7 Ex A

5    ("AA").  The Phase I award found Tranax liable for breach of

6    contract, found Hyosung not liable for breach of contract and found

7    that Tranax was not entitled to a set-off.  AA §§ 11.1.3-6.  The

8    award found both Tranax and Hyosung liable on some but not all

9    trademark claims.  AA §§ 11.1.8-13.  Having determined liability

10   for all claims and counterclaims, the award found that Hyosung

11   succeeded on its claim for damages on Tranax's unpaid bills in the

12   amount of $3,180,090.00 plus interest.  AA § 10.1.37(a).  The award

13   found Hyosung entitled to "[a]n order requiring [Tranax] to make

14   immediate payment of the principal amount of US$3,180,090.00 to

15   Hyosung America."  Id.  The assessment of other damages was

16   reserved for determination during the Phase II proceedings.  Id

17   § 11.5.

18           On February 24, 2010 Hyosung filed the instant petition

19   to confirm the partial award.  Hyosung also filed motions for

20   expedited discovery and for a writ of attachment to ensure that

21   Tranax will have the assets to pay the award if confirmed.

22   Following a hearing on March 25, 2010, the court issued an order

23   granting Hyosung's motions on March 31, 2010.

24           Hyosung now asks the court to confirm the Phase I partial

25   award and enter judgment accordingly.  Tranax opposes confirmation

26   of the Phase I award on the ground that it is not a final award,

27   and asks the court to vacate its earlier order issuing the writ of

28   attachment and granting expedited discovery.  The court determines

3

**United States District Court**
For the Northern District of California

1   that a hearing is not necessary.  Having considered the papers and

2   the relevant legal authority, the court GRANTS Hyosung's petition

3   to confirm the arbitration award.  Accordingly, the court denies

4   Tranax's request to vacate the March 31, 2010 order.

5

6                                   II

7                                   A

8           The parties do not dispute that the Phase I award is

9   subject to the United Nations Convention on the Recognition and

10   Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 UNTS 38

11   ("New York Convention").  The Federal Arbitration Act provides that

12   within three years after an arbitration award falling under the New

13   York Convention is made, any party to the arbitration may apply for

14   an order confirming the award as against any other party to the

15   arbitration.  9 USC § 207.  The Federal Arbitration Act requires

16   that "[t]he court shall confirm the award unless it finds one of

17   the grounds for refusal or deferral of recognition or enforcement

18   of the award specified in the said Convention."  Id.

19           Tranax bases its opposition to the petition to confirm

20   award on Article V § 1(e) of the New York Convention, which allows

21   the court to refuse recognition and enforcement upon proof that

22   "[t]he award has not yet become binding on the parties."  Doc #7 Ex

23   D.  Tranax contends that the Phase I award decided "only questions

24   of liability," and that the undecided issues such as damages

25   preclude a finding that the award is final.  Doc #40 at 3.

26           In the March 31, 2010 order issuing a writ of attachment

27   and granting Hyosung's discovery motion, the court found that "the

28   Ninth Circuit authority presented by Tranax does not resolve the

**United States District Court**
For the Northern District of California

1  question whether the court has jurisdiction to confirm a partial

2  international arbitration award under 9 USC § 207."  Doc #33 at 5.

3  The court therefore turned to the reasoning of the Second Circuit

4  in <u>Metallgesellschaft AG v M/V Capitan Constante</u>, 790 F2d 280, 283

5  (2d Cir 1986), which held that the court has jurisdiction to

6  confirm a partial international arbitration award where the award

7  "finally and conclusively dispose[s] of a separate and independent

8  claim and [is] subject to neither abatement nor set-off."  Adopting

9  the reasoning of <u>Metallgesellschaft</u>, the court determined that it

10 may confirm a partial arbitration award that conclusively disposes

11 of a claim if no possibility for set-off or abatement remains, as

12 confirmation of the partial award will not affect any further

13 proceedings before the arbitrator.  Doc #33 at 6.  The court found

14 that "[t]he Phase I award determines liability and the amount

15 Tranax owes Hyosung because of Tranax's unpaid invoices.  Although

16 further proceedings are scheduled to occur before the arbitrator,

17 the arbitrator's resolution of the unpaid invoices is not subject

18 to change."  Doc #33 at 5.  Thus, for the purposes of weighing the

19 probable validity of Hyosung's claim upon issuance of a writ of

20 attachment, the court found that the Phase I award "finally and

21 conclusively determines liability and damages arising from the

22 parties' dispute over unpaid invoices.  Accordingly, the court

23 concludes that the Phase I award is the proper subject of a

24 petition to confirm under 9 USC § 207."  Id at 6.

25        In opposition to the petition to confirm award, Tranax

26 has not provided authority to persuade the court that the Phase I

27 award is not binding under the New York Convention and therefore

28 not enforceable.  Even after the court issued guidance in its March

5

1  31, 2010 ruling, Tranax relies on several authorities governing the

2  finality of domestic arbitration awards under the Federal

3  Arbitration Act, but does not shed much more light on the

4  applicable standards for confirming partial foreign arbitration

5  awards under the New York Convention.  Doc #40 at 3 (citing

6  Kerr-McGee Refining Corp v M/T Triumph, 924 F2d 467, 471 (2d Cir

7  1991) (determining finality of award under Federal Arbitration Act)

8  and Michaels v Mariforum Shipping, SA, 624 F2d 411, 414 (2d Cir

9  1980) (judicial review of arbitrators' interim ruling that does not

10 resolve finally the issues is unavailable under the Federal

11 Arbitration Act)).

12         Tranax cites Hall Steel Co v Metalloyd Ltd, 492 F Supp 2d

13 715 (ED Mich 2007), for the proposition that Hyosung must establish

14 either an immediate need for relief or an intent of the parties to

15 have the arbitrator issue an interim arbitration award that is

16 subject to confirmation.  Doc #40 at 4.  The court does not find

17 Hyosung's arguments in support of either requirement to be

18 persuasive.

19

20                                  1

21         Tranax suggests that the court should follow the

22 reasoning of Hall Steel to adopt a condition of "immediate need for

23 relief" in order to confirm a partial award under the New York

24 Convention.  Hall Steel cites circuit court decisions addressing

25 interim arbitration rulings where a party to the arbitration

26 presented some urgency and sought immediate relief from the

27 arbitrators, 492 F Supp 2d at 719, but none of those circuit court

28 decisions required an urgent need to confirm the interim

6

**United States District Court**
For the Northern District of California

1    arbitration decisions; rather the circuit courts considered whether

2    the interim order finally disposed of a discrete or severable

3    issue.

4            Hall Steel relies on Island Creek Coal Sales Co v City of

5    Gainesville, 729 F2d 1046, 1047-48 (6th Cir 1984), abrogated on

6    other grounds by Cortez Byrd Chips, Inc v Bill Harbert Const Co,

7    529 US 193 (2000), in which the Sixth Circuit upheld the district

8    court's confirmation of an interim arbitration order granting

9    injunctive relief to preserve the status quo on shipments of coal.

10   The Sixth Circuit held that under 9 USC § 10, the interim award

11   disposed of a self-contained issue (whether the city was required

12   to perform the contract during the pendency of arbitration

13   proceedings) and could be confirmed "notwithstanding the absence of

14   an award that finally disposes of all the claims that were

15   submitted to arbitration."  729 F2d at 1049 (citations omitted).

16   The circuit court did not rely on the urgency of the situation to

17   determine the finality of the award.

18           To support a condition of "immediate need" to confirm an

19   interim award, Hall Steel also cites Publicis Communication v True

20   North Communications, Inc, 206 F3d 725 (7th Cir 2000), in which a

21   party to the arbitration, True North, claimed an urgent need for

22   its opponent's tax records, and the arbitration tribunal ordered

23   the production of those tax records.  The Seventh Circuit affirmed

24   the district court's confirmation of the arbitration decision under

25   the New York Convention, noting the exception under Article V §

26   (1)(e) to judicial enforcement for awards that have not yet become

27   binding on the parties.  206 F3d at 728.  The Seventh Circuit

28   rejected the producing party's formalistic argument that the

**7**

United States District Court

For the Northern District of California

1   tribunal's decision was not final because it did not bear the word

2   "award," and rather considered the decision's "substance and

3   effect" to determine whether the tribunal's order to turn over the

4   tax records was final and subject to confirmation.  Id at 730.  The

5   circuit court reasoned that "[a] ruling on a discrete, time-

6   sensitive issue may be final and ripe for confirmation even though

7   other claims remain to be addressed by arbitrators."  206 F3d at

8   729.

9           Although the Seventh Circuit noted that the tribunal had

10  determined that True North's need for tax records was urgent at the

11  time that the award was issued, the urgency was not determinative

12  of the finality of the award for purposes of confirmation.  On the

13  contrary, True North's need for tax records was no longer urgent

14  when the circuit court reviewed the district court's confirmation

15  of the arbitration decision.  The circuit court noted that the

16  dispute over the tax records had been rendered moot because True

17  North had received all the documents that it wanted, but the court

18  decided to proceed with the merits of the dispute over confirmation

19  of the award.  206 F3d at 727-28.  The Seventh Circuit considered

20  the intent of the arbitrators in issuing their interim decision,

21  noting that the arbitration decision stated that "the delivery of

22  the documents should not await final confirmation in the Final

23  Award."  Id at 729.

24           Hall Steel also cites Pacific Reinsurance v Ohio

25  Reinsurance, 935 F2d 1019, 1022 (9th Cir 1991), on which Tranax

26  relies in its opposition to the petition to confirm award.  As the

27  court noted in the March 31, 2010 order granting Hyosung's motions

28  for expedited discovery and issuance of writ of attachment, Pacific

8

**United States District Court**
For the Northern District of California

1  <u>Reinsurance</u> held that the district court has jurisdiction under the

2  Federal Arbitration Act to review and confirm temporary equitable

3  awards.  Doc #33 at 5.  There, the Ninth Circuit held that

4  temporary equitable relief such as setting up an escrow account

5  pending the arbitrators' decision could be important to preserve

6  assets or performance needed to make a potential final award

7  meaningful and must be enforceable at the time it is granted, not

8  after an arbitrator's final decision on the merits.  935 F2d at

9  1023.  Although <u>Pacific Reinsurance</u> recognizes the finality of such

10  a temporary equitable order under the Federal Arbitration Act, the

11  Ninth Circuit did not require "immediate need" as a requisite

12  condition to confirm an interim award, as Tranax suggests.

13  Because the court does not adopt a requirement that the

14  party seeking to confirm a partial foreign arbitration award must

15  present an "immediate need for relief" as proposed by Tranax, the

16  court holds that the Phase I award is binding on the parties

17  because it finally and conclusively disposes of Hyosung's separate

18  and independent claim of damages arising from the parties' dispute

19  over unpaid invoices and is not subject to abatement nor set-off.

20  <u>Metallgesellschaft</u>, 790 F2d at 283.  The arbitrator's intent to

21  make this award binding is demonstrated by his finding that Hyosung

22  is entitled to "immediate payment of the principal amount of

23  US$3,180,090.00" and his finding that Tranax was not entitled to

24  set-off.  AA §§ 10.1.37(a) and 11.1.6.  In advance of the hearing,

25  the arbitrator issued a procedural order indicating that he would

26  defer the award on liability for the unpaid invoices if he found

27  that Tranax established any defense of set-off.  Doc #39 Ex A

28  § 1.5.  Having decided that Tranax was not entitled to set-off, the

**United States District Court**
For the Northern District of California

1  arbitrator proceeded to award the unpaid invoices, which differed

2  from the other claims for damages because it involved an agreed

3  sum.  Id.  In light of the arbitrator's stated intent to conduct an

4  efficient hearing by bifurcating the issues of liability and

5  quantum of damages other than unpaid invoices, id § 1.4, the court

6  finds that the Phase I award disposes of the liability issues and

7  amount of damages for the separate, independent claim over unpaid

8  invoices.  See <u>Publicis Communication</u>, 206 F3d at 730-31 ("If the

9  tribunal's decision wasn't final, if the tribunal really didn't

10  intend to finalize it until eons later * * * then the [arbitral]

11  decision was a meaningless waste of time.")

12

13                                 2

14        Tranax cites <u>Hall Steel</u> for the alternative proposition

15  that an interim or partial award should be confirmed only where the

16  parties have evidenced such an intent.  Doc #40 at 5-6.  Tranax's

17  reliance on <u>Hall Steel</u> for this proposition is misplaced.  <u>Hall</u>

18  <u>Steel</u> did not apply this reasoning in its decision and noted that

19  there was no indication that the arbitrator believed he was acting

20  in accordance with the parties' shared intent to decide liability

21  for costs incurred in litigating the threshold issue of proper

22  forum.  492 F Supp 2d at 720 n1.  In fact, the arbitrator in <u>Hall</u>

23  <u>Steel</u> acknowledged the plaintiff's objection to handling the

24  determination of costs first, but decided nevertheless to proceed.

25  Id.  Similarly, Tranax objected to bifurcation of the arbitration

26  proceedings, but the arbitrator determined that bifurcation would

27  make for a more efficient hearing.  AA § 5.5.2.

28  \\

**United States District Court**
For the Northern District of California

1          Any doubt about Tranax's intent to submit to a binding

2   arbitration decision is resolved by the arbitration clause in the

3   2005 Distributorship Agreement.  Tranax's argument that the

4   arbitration clause contemplates a single arbitration award because

5   it states that "the award of the arbitral tribunal shall be final

6   and binding" is not supported by any language in the arbitration

7   clause to indicate such an intent and epitomizes the kind of

8   "superficial technicalities" decried by the Seventh Circuit in

9   Publicis Communication, 206 F3d at 730.

10

11                                     B

12          Tranax further challenges confirmation of the Phase I

13  award on the grounds of public policy and the unresolved issue of

14  attorney fees and costs.  Neither argument has merit.  First,

15  Tranax does not appear to rely on the public policy defense under

16  Article V section 2(b) of the New York Convention, but only

17  suggests that confirmation of the Phase I award now would offend

18  public policies that discourage a multiplicity of proceedings and

19  court interference in arbitration proceedings.  Here, the fear of

20  multiple proceedings evaporates in light of the arbitrator's

21  decision to make the arbitration more efficient by bifurcation.

22  Furthermore, courts have recognized that the New York Convention

23  and the mandatory language in its implementing legislation have "a

24  pro-enforcement bias," leaving little discretion to the district

25  courts.  Glencore Grain Rotterdam BV v Shivnath Rai Harnarain Co,

26  284 F3d 1114, 1120 (9th Cir 2002) (citations omitted).  In contrast

27  to the rules governing federal civil litigation, the provisions of

28  the Federal Arbitration Act implementing the New York Convention do

**United States District Court**
For the Northern District of California

1 not impose strict gate-keeping procedures on the district courts to

2 fulfill their mandate to confirm international arbitration awards.

3       Second, Tranax contends that the Phase I award is not

4 final and may not be confirmed because the award leaves open the

5 issue of attorney fees and costs.  AA § 10.9.2.  The issue of

6 attorney fees does not bear on Tranax's liability for the amount

7 due on the unpaid invoices.  Based on the experience of the

8 district courts in determining attorney fees and costs following

9 entry of judgment on the merits, the court concludes that the

10 arbitrator's determination of attorney fees is easily severable and

11 distinct from the award of damages for unpaid bills plus interest,

12 which was the subject of the award.

13

14                         C

15       The amount awarded to Hyosung in the Phase I arbitration

16 award, as hereby confirmed, is summarized below:

| Description | Amount |
| --- | --- |
| Principal sum due on unpaid bills (AA § 11.3.1(a)) | $3,180,090.00 |
| Simple interest at 6% per annum accrued from the due date of each invoice to the filing of arbitration on August 24, 2007 (AA § 11.3.1(b)) | $120,637.01 |
| Simple interest at 20% per annum accrued from August 25, 2007 to August 24, 2009 (AA § 11.3.1(c)) | $1,272,036.00 |
| Simple interest at $1,742.52 per day from August 25, 2009 to May 6, 2010 (254 days) (Id) | $442,600.08 |
| TOTAL AWARD as of May 6, 2010 | $5,015,363.09 |

**12**

**United States District Court**
For the Northern District of California

1   Thus calculated, the award to Hyosung totals $5,015,363.09 as of

2   May 6, 2010 plus daily interest of $1,742.52 per day thereafter

3   until the date of payment.

4

5                                    III

6          For the reasons explained above, the court GRANTS

7   Hyosung's petition to confirm the arbitration award.  Doc #1.

8   Accordingly, the court orders as follows:

9          (1)   Pursuant to 9 USC § 201 et seq, the Partial Award

10               entered on February 9, 2010 in <u>Nautilus Hyosung Inc</u>

11               <u>et al v Tranax Technologies, Inc</u>, ICDR Case No 50

12               155 T 00328 07, is hereby CONFIRMED;

13         (2)   the clerk is directed to enter judgment in favor of

14               Petitioners Hyosung (America) Inc and Nautilus

15               Hyosung Inc, and against Respondent Tranax

16               Technologies, Inc, for the amount of $5,015,363.09,

17               plus daily interest of $1,742.52 each day after May

18               6, 2010 until the date of payment, in conformity

19               with this Order confirming the Partial Award; and

20         (3)   the clerk is directed to terminate all pending

21               motions and close the file.

22

23

24         IT IS SO ORDERED.

25

26         _____

27         VAUGHN R WALKER
           United States District Chief Judge
28

                                    13